UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 08-22-GWU

BONNIE TURPIN,                                                              PLAINTIFF,

VS.                            **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                          DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI).  The appeal is currently before the court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.      Is the claimant currently engaged in substantial gainful activity?
        If yes, the claimant is not disabled.  If no, proceed to Step 2.
        See 20 C.F.R. 404.1520(b), 416.920(b).

2.      Does the claimant have any medically determinable physical
        or mental impairment(s)? If yes, proceed to Step 3.  If no, the
        claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.      Does the claimant have any severe impairment(s)--i.e., any
        impairment(s) significantly limiting the claimant's physical or
        mental ability to do basic work activities?  If yes, proceed to

08-22  Bonnie Turpin

Step 4.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.  <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

2

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

3

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

08-22  Bonnie Turpin

to afford or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  <u>Id.</u> at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  <u>E.g.</u>, <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.

6

08-22  Bonnie Turpin

In such cases, the agency may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, Bonnie Turpin, was found by an Administrative Law Judge (ALJ) to have a "severe" combination of impairments consisting of migraine headaches, mild degenerative disc disease of the cervical spine, borderline intellectual functioning, depression, and post-traumatic stress disorder. (Tr. 13).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 15-22).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether an individual of the plaintiff's age of 57 to 59, seventh grade education, and work experience as a tobacco pollinator and assembly line worker could perform any jobs if she had no physical limitations, but was limited to simple, entry level work with one- and two-step procedures, no frequent changes in work routines, no requirement for detailed

7

or complex problem solving, independent planning, or the setting of goals, no requirement for more than occasional interaction with coworkers or the general public, and no fast-paced assembly lines or rigid work schedules.  (Tr. 56).  The VE responded that there would be light and medium level jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 59-60).

On appeal, this court must determine whether the hypothetical factors are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mrs. Turpin alleged disability beginning May 27, 2005 due to migraine headaches, irritable bowel syndrome, depression, anxiety, and panic attacks.  (Tr. 164).  The plaintiff testified that she had left her job because she was upset over a breakup with her boyfriend, but she had not gone back to work, even though they had soon reconciled, because she was incapacitated by migraine headaches five days a week, which medication did not control.  (Tr. 28-30).  She stated that her problems with migraines had been present for over 26 years, but they were getting worse.  (Tr. 40).  When she had a migraine, she would also have nausea and diarrhea, and got in trouble at work for throwing up.  (Tr. 44).  She had been warned about missing too much work.  (Tr. 42).  She also described anxiety and panic attacks, and was taking medication from her family physician, Dr. Asher.  (Tr. 49-51).  He had not referred her to mental health counseling, however.  (Tr. 52).

08-22  Bonnie Turpin

Although the medical evidence does show that the plaintiff complained of headaches prior to stopping work, a treating neurologist, Dr. Aleksandr Mogilevski, submitted office notes from 2004, which also referred to prior treatment which had led to a "substantial remission in her headaches" the previous year.  (Tr. 267).  She informed Dr. Mogilevski in February, 2004 that she had been involved in a motor vehicle accident the previous August and had developed new headaches.  (Id.).  His examination showed neck tenderness and spasm and a somewhat limited range of motion, but the examination was otherwise normal.  (Id.).  A CT scan of the brain was unremarkable while a cervical MRI showed mild protrusions along with degenerative disc disease and degenerative joint disease at multiple levels.  (Tr. 262-3, 266).  Dr. Mogilevski prescribed the medication Topamax, and Mrs. Turpin reported improvement in both neck pain and headaches on March 26, 2004.  (Tr. 265).  By April 16, 2004, the neck muscle spasms had completely resolved, although she was still reporting one headache a week which was not helped with medication.  (Tr. 264).  There are no further visits to this source.

The plaintiff's next two visits to her family physician, Dr. Bennett Asher, referred only to a rash apparently due to contact dermatitis.  (Tr. 300-1).  However, on May 27, 2005, Mrs. Turpin requested that she be taken off work for three months because she had broken up with her fiancé and they worked at the same business.  (Tr. 299, 375). She reported that she was crying and could not sleep at night.  (Id.).

08-22  Bonnie Turpin

Dr. Asher obligingly requested that her employer place the plaintiff on three months medical leave due to "situational depression" and "insomnia." (Tr. 380, 382). On an insurance company form, he specifically stated that she had no <u>physical</u> impairments, and was capable of heavy work with no restrictions. (Tr. 382). However, from a mental standpoint, she was said to be "unable to engage in stress situations or engage in interpersonal relations." (Id.). Dr. Asher did not provide any further statements regarding functional capacity, and the plaintiff's next reported visit to him was not until November 21, 2005, when her only complaint was of bronchitis and coughing; she had been hospitalized for three days in late October for pneumonia (Tr. 269-70, 385).

A state agency physician who reviewed the record on June 15, 2006, Dr. Carlos X. Hernandez, concluded that there was no evidence of a "severe" physical impairment. (Tr. 352).

The ALJ declined to accept the opinion of Dr. Terry Troutt, a physician who examined the plaintiff on one occasion in November, 2006. (Tr. 396). Mrs. Turpin described a long history of severe migraines, in addition to left hip pain (for which she had received no treatment), bowel problems, and cramping in her foot. (Tr. 396). She stated that she had poor concentration and avoided social settings, although medications for anxiety and depression had helped. (Id.). Dr. Troutt also reviewed records from Dr. Asher, various hospitalization records, and records from

10

Dr. Mogilevski and other physicians who had treated the plaintiff prior to the date she stopped working. (Tr. 398-400).  Dr. Troutt's own physical examination showed that her eyes were sensitive to light and her back had subjective tenderness and low back pain with extension and torso twisting.  (Tr. 397-8).  There was also some right upper quadrant guarding and tenderness.  However, her neck was not tender, and there was a full range of motion of the cervical spine with no spasms or trigger points.  Nevertheless, Dr. Troutt concluded that the plaintiff was permanently and totally disabled from any form of gainful employment.  He stated that her physical conditions "severely limit her function," but did not provide specific limitations.  (Tr. 401).  In a later deposition, Dr. Troutt reported that he had diagnosed a mixed type of headaches and migraine tension headaches, depression, and irritable bowel syndrome from his review of the medical records.  (Tr. 356).  He asserted that there were a number of possible side effects from the medication she took for pain and anxiety, such as sedation, lethargy, and decreased concentration. (Tr. 357). He felt that there could be a safety hazard if she were exposed to heights, moving equipment, and similar items.  (Tr. 358).

The ALJ could reasonably have declined to accept Dr. Troutt's opinion regarding physical factors for several reasons.  His conclusion that the plaintiff was permanently and totally disabled was a vocational conclusion outside his area of expertise.  His lack of specificity in describing functional limitations due to physical

limitations is also problematical.  He also couched his discussion of side effects in terms of what her medications could <u>possibly</u> cause, but it does not appear that the plaintiff herself ever complained of side effects; in fact, she denied any medication side effects in her disability report (Tr. 169) and Dr. Mogilevski had indicated in March, 2004 that she reported no side effects from Topamax (Tr. 265).  Moreover, although Dr. Troutt did review previous records, he was still a one-time examiner whose opinion was not entitled to the deference of a treating source.  As previously noted, the plaintiff's treating source, Dr. Asher, specifically gave the opinion at the time the plaintiff stopped working that she had no physical impairments, a conclusion with which the state agency physician agreed.  Accordingly, this portion of the administrative decision is supported by substantial evidence.[1]

Turning to the plaintiff's mental condition, while Dr. Asher provided her with a temporary disability slip in May, 2005, he never indicated that her condition was permanent or provided other restrictions.  Nor does it appear credible that disability

---

[1]The plaintiff argues that she should have been found disabled under the so-called "worn out worker rule" contained at 20 C.F.R. §§ 404.1562 and 416.962.  These sections provide that a person with no more than a marginal education and 35 years or more of work experience doing only arduous, unskilled physical labor will be considered disabled if he or she has a "severe" impairment preventing this kind of work.  However, the plaintiff provided information that she had worked for only 10 years, not 35.  (Tr. 165).  Therefore, whatever might be said about the arduous nature of her work, she does not meet a threshold requirement under these sections.

08-22  Bonnie Turpin

based on a short-term breakup with a fiancé, with whom she was soon reconciled, would provide a basis for permanent restrictions.

The state agency obtained a consultative psychological examination by Dr. Harwell Smith in February, 2006, at which the plaintiff described nervousness, depression, anxiety, and a history of an abusive marriage.  (Tr. 307).  Dr. Smith described her as appearing tense, anxious, and fearful, and he stated that her high anxiety level interfered with her ability to think clearly, although she could write a sentence and do simple addition and subtraction.  (Tr. 308).  The plaintiff told Dr. Smith that she did not know what she was depressed about, and that she had stopped work because of her headaches and crying spells.  (Tr. 308-9).  She was able to do a few activities, such as reading, watching TV, and cleaning house.  (Tr. 310).  Dr. Smith diagnosed post-traumatic stress disorder with related physical problems and "rule out" borderline intellectual functioning.  (Tr. 311).  He felt that she would have a poor ability to interact socially, sustain concentration and persistence, interact with coworkers, and adapt or respond to the pressures of a day-to-day work setting.  (Id.).

State agency psychologists who reviewed the record, however, gave Dr. Smith's report only limited weight, in part because they noted that her former employer had provided very positive comments regarding her work performance.

08-22  Bonnie Turpin

(Tr. 316, 319).[2] The state agency psychologist felt that the plaintiff would be moderately limited in her ability to understand, remember, and carry out detailed instructions, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, interact appropriately with the general public, and respond appropriately to changes in the work setting.  (Tr. 314-15, 348-9).  Although the ALJ did not use the specific language of these restrictions, the factors he cited were generally consistent with the exception of not providing a restriction on performing activities within a schedule, being punctual, and maintaining regular attendance; however, her former employer's indication that she had a very good attendance record provides a reasonable basis for not including a restriction in this area.

Dr. Troutt also indicated that the plaintiff would have poor interaction skills, concentration, and cognitive skills.  (Tr. 401).  His limitations appear to be partially related to specific medication side effects which the plaintiff herself did not describe as well as being as a result of her headache problem (Tr. 357).  The ALJ reasonably found that the lack of evidence of absenteeism due to headaches and the lack of evidence of treatment from Dr. Asher for this condition after 2005 diminished the

_____

[2]The human resources manager at the plaintiff's employer stated that she had been very good with her attendance, "stayed busy all day long," "had a wonderful disposition" and was easy to get along with, and adapted well to change.  (Tr. 172-3).  His only negative comment was that at times she would be overwhelmed by stress "but some positive reassurance would be all she needed."  (Tr. 173).

08-22  Bonnie Turpin

credibility of the plaintiff's subjective headache complaints.  For this reason, and

because Dr. Troutt was a one-time examiner without special expertise in the mental

health area, the ALJ could reasonably have discounted his opinion.

The decision will be affirmed.

This the 5th day of November, 2008.

**Signed By:**

_**G. Wix Unthank**_

**United States Senior Judge**

15